### WALKER v. THE STATE.

1. In making a statement the accused is not under examination as a witness, and his counsel has no right to ask him questions. If, in continuing his statement, the prisoner refers to the subject-matter of a suggestion or question which his counsel has made, and prior to such reference the accused has been notified by the judge that if he answers the suggestion or question he will subject himself to cross-examination, he is not even then lawfully subject to such examination. The right to make such a statement as he may deem appropriate is by law given to a prisoner on trial, and, unless he consents thereto, he can not be compelled to answer questions on cross-examination.

2. The manner of conducting a trial of one charged with a criminal offense is largely within the discretion of the judge presiding, and when, after the evidence of both sides has been closed, the trial judge suspends the progress of the trial for a limited time for the purpose of procuring the attendance of an important witness, such discretion is not abused.

3. No evidence appears in the record which authorized a charge in relation to threats.

4. The evidence was sufficient to authorize the judge to instruct the jury as to the law of conspiracy.

5. When it appeared on a trial for murder that the deceased was shot and wounded by the defendant using a shot-gun and another person using a pistol, that one of the wounds inflicted by the pistol was certainly mortal, and probably one or more of the wounds inflicted by the shot-gun were so, a charge to the effect that if the jury should believe that no conspiracy existed between the parties doing the shooting, yet if they should believe that the defendant inflicted on the deceased a wound that would have produced death, they were authorized to convict the defendant, provided the other elements of murder existed when he shot, was error. To sustain a conviction of mur-

der in such a case, the evidence must be such as to authorize the jury to find that death ensued as the result of the act of the defendant on trial.

Argued October 22,—Decided November 12, 1902.

Indictment for murder. Before Judge Littlejohn. Sumter superior court. July 21, 1902.

*Blalock & Cobb*, for. plaintiff in error.

*Boykin Wright, attorney-general, F. A. Hooper, solicitor-general,* and *J. A. Ansley Jr.*, contra.

LITTLE, J. Walker and Jones were jointly indicted for the murder of Holton. Walker was separately placed on trial, and convicted. He submitted a motion for a new trial, which being overruled, he excepted. We reverse the judgment of the court below overruling the motion for a new trial on the grounds that the evidence as it appears in the record does not show beyond a reasonable doubt that the accused was guilty of the offense as charged, and because of certain rulings made by the trial judge, which will be hereafter considered. It is not, we think, necessary to set out the evidence upon which the State relies to support the conviction. It may not be amiss, however, to remark that the brief sets out the evidence in such a confused and disconnected manner as to make it a work of great difficulty to determine what has or has not been proved. If any attempt was made to put the evidence in narrative form, we must say that it was not very successful. It will be sufficient, however, in reference to the evidence, to say that enough may be gathered from the brief to show that the jury were authorized to find that the plaintiff in error shot the deceased, without excuse, with a gun. It does not at all show that he shot him with a pistol, nor does it satisfactorily appear that the deceased died from the effects of the wounds inflicted by the accused.

1. The first and second grounds of the amended motion will be considered together. It appears that during the trial, and while the accused was making his statement to the jury, his counsel, addressing the court, said that he would like to direct the mind of the accused to a particular fact, and let him explain it. In response to this request the court informed counsel that the latter could ask questions of the accused, under the rule, if he desired. Counsel then replied that he did not desire to do so, but wished to direct the attention of the accused to a certain matter and let him explain

that. The trial judge then directed the prisoner not to answer that question (suggested by counsel), and stated that if he did he would subject himself to cross-examination. Counsel, then addressing the prisoner, remarked, if there was anything else that he desired to state to do so; if not, to come down. The prisoner then referred to the subject previously suggested by counsel to the court, and explained the matter to which his attention had been thus directed. The solicitor-general then insisted that reference to that subject subjected the prisoner to cross-examination, and the court so ruled. His counsel objected to a cross-examination, which objection was overruled because the prisoner had answered the question suggested by his counsel. The court then permitted the prisoner to be cross-examined by the solicitor-general. The bill of exceptions assigns as error the refusal of the court to allow defendant's counsel to direct the mind of the prisoner to the subject about which he had neglected to make a statement, and also the ruling of the court which allowed the prisoner to be cross-examined. It was said by Judge Bleckley, in delivering the opinion in *Brown* v. *State*, 58 *Ga.* 212: " In making his own statement to the court and jury, the prisoner is not under examination, and his counsel has no right to ask him questions. Doubtless the court might, at the prisoner's request, permit questions to be put to him, as matter of discretion." See also, to the same effect, *Echols* v. *State*, 109 *Ga.* 508. The ruling in the *Brown* case, supra, was made because of the fact that while Brown was making his statement his counsel proposed to examine him, and the judge not only refused to allow this to be done but also declined to hear from counsel as to the question which it was desired to ask the prisoner; and we entirely agree in the view expressed by Judge Bleckley, that counsel had no right to ask the accused questions in relation either to matters stated or to any not stated.

The privilege which the law gives a prisoner to make a statement is a much abused one. This right was granted in the interest of truth and justice, but it extends no further than to permit the prisoner himself to make to the court and jury just such a statement as he deems proper in his defense. The statement which the law recognizes is not evidence, and should consist only of just such things in relation to his case as the prisoner himself wishes to say. The statement to be made, and as made. must be that of

the prisoner.   In the case of *Robinson* v. *State*, 82 *Ga.* 535, it appeared that on the trial, after the conclusion of the statement made by the accused, the trial judge asked of the prisoner whether he meant to deny the testimony of the witnesses.   This court ruled that such interrogation was improper, and, referring to the matter in the opinion which he delivered in that case, Chief Justice Bleckley said: "It certainly was irregular to interrogate Henry Goldsmith after he had concluded his statement, by asking him whether he meant to deny the testimony of the witnesses; but the court explains that this was done for the purpose of calling attention to an omission in the statement, and with a purpose altogether friendly. The motive was a kind one.   Nevertheless, the act was not well-advised, and we can not approve it."   We have, then, two propositions expressly ruled by this court: first, that his counsel has no right to ask questions of the prisoner while he is making his statement, in relation to the same; second, that the trial judge himself can not do so.   While counsel, as thus shown, has no right to ask the accused questions, or to make suggestions to him in relation to the matter of his statement, this court in a later case, *Echols* v. *State,* supra, ruled that it was in the discretion of the judge to allow either to be done.   In the present case the judge, in the exercise of his discretion, refused to allow the desired suggestion to be made.   In doing so he did not abuse his discretion.   In overruling the motion for a new trial his honor who presided in the court below placed his ruling, by which he allowed cross-examination, on the idea that the prisoner had been instructed by the court that if he answered the question or suggestion made by counsel it would subject him to cross-examination, and that as the prisoner did answer the question or suggestion, he was thus lawfully subjected to a cross-examination.   We can not agree in this view.   We know of no rule of law or practice which sanctions it.   The statute expressly declares that the prisoner shall not be compelled to answer questions on cross-examination should he think proper to decline to answer them. Furthermore, so long as the prisoner confines his statement to matters connected with his defense, he has the right to refer to any particular phase of it, and this he may do without let or hindrance. While counsel has no right to make suggestions to him or to put any question to him, if he do so, even while out of order, the prisoner may lawfully incorporate in his statement any matter which

involves the subject of the suggestion or question, without placing himself at any disadvantage, because his right to make such a statement as he may deem proper is unqualified. It does not appear in this case that the prisoner consented to be cross-examined. His counsel objected to it; and when the court ruled that by answering the suggestion or question of his counsel the prisoner had subjected himself to cross-examination, under which ruling the prisoner was cross-examined, he committed an error which requires the grant of a new trial.

2. It is insisted that the trial judge erred, after both the State and the defendant had closed, in allowing the case to be suspended, on the application of the solicitor-general, for the purpose of sending for a witness, the defendant at the time objecting to such suspension. To this ground of the motion the presiding judge attaches an explanatory note to the effect that on satisfactory proof submitted to the court of the existence of the witness, the importance of his testimony, and that the solicitor-general had just heard of the same, he suspended the trial from 11:45 a. m. to 3:10 p. m. in order to secure the presence of the witness. We find no error in this. The manner of conducting a trial is largely in the discretion of the judge presiding, and that discretion was not abused by a suspension of the trial for the limited time named, for the purpose of procuring the evidence of an important witness. On the contrary, such a suspension seems to have been in the furtherance of justice.

3. An examination of the evidence fails to disclose that any witness testified as to threats made on the part of the accused against the deceased; and for that reason it was error on the part of the trial judge to charge the jury in relation to threats.

4. Complaint is made that the court erred in charging the jury in relation to the law of conspiracy. The accused with one Jones was jointly indicted, and the charge objected to appears to be a full and accurate presentation of the law in relation to the liability of one of two conspirators for the acts of the other. There can be no objection to the matter of the charge, and on a review of the evidence we find there was evidence which tended, to some extent at least, to show that the accused and Jones had entered into a conspiracy to kill the deceased.

5. It is claimed that the court erred in instructing the jury as follows: "After going through the evidence, if you should have

a reasonable doubt on your mind. that any conspiracy existed between these parties, Pomp Walker and Eli Jones, to take the life of this deceased, Tom Holton, yet if you should believe from the evidence that wounds were inflicted upon the deceased by Eli Jones, and that the defendant in this case inflicted a mortal wound on Tom Holton, a wound that would have produced death, then you would be authorized to return a verdict finding the defendant guilty of murder, provided you believe that all the other elements of murder existed about which I have charged you." / When fairly construed, we think this portion of the charge might be understood to have this meaning: that if both Jones and the accused inflicted wounds on the person of the deceased, and the wounds inflicted by the accused *would have* resulted in death, then the accused could be lawfully convicted, although as a matter of fact the wound inflicted by Jones may have been the immediate cause of the death. So construed, this charge was error. / The State charged that Walker was guilty of murder in killing Holton. It was therefore incumbent upon the State, before a conviction for any grade of homicide could have been had, to prove not only that the deceased was killed, but that he died from the effects of a wound inflicted by the accused. Mr. Kerr in his treatise on the Law of Homicide, §31, on authority, lays down the following propositions: "Where the defendant inflicts a fatal blow, he can not escape liability for his wrongful act from the fact that other blows were subsequently inflicted by other persons, which hastened the death. But if one inflicts a mortal wound, and, before death ensues, another kills the same person by an independent act, without concert or procurement of the one who caused his first wound, the first person can not be convicted of murder," etc. Mr. Wharton, in his Criminal Law (vol. 1, § 153), says: "When after a wound a new and independent causation intervenes, producing death, this relieves parties to whom such new causation is not imputable." And again, in the same volume, § 309 a: "The death must be traced to the blow charged to the defendant." It has been ruled that "If a person receives a wound wilfully inflicted by another, which might cause death, and death actually follows, the burden is on him who inflicted it to show that it did not cause the death." Hughes' Criminal Law and Procedure, § 87. The converse of this proposition must be true — that is, if the person inflicting such wound in

fact shows that it did not cause the death, as for instance by show-
ing that death actually occurred in consequence of a wound in-
flicted by another,— he meets this burden, and can not be convicted.
It is, however, unnecessary to cite authorities to support this propo-
sition. Of course, in the case of a proved conspiracy, one may be
found guilty while another inflicted the wound which caused death.
But in an individual case one can not be lawfully convicted of mur-
der when it is shown that the deceased really died from another
and a distinct wound inflicted by a different person. We of course
are not to be understood as saying that the evidence in this case
shows that the deceased did not die from the wound inflicted by
the accused. That is a question for legitimate determination by a
jury. We are intending only to meet the proposition involved in
the instruction to the jury under consideration. That instruction
contains the proposition that if the accused inflicted on the person
of the deceased a wound that *would have* produced death, the jury
would be authorized to return a verdict of guilty, if the other ele-
ments of murder existed. The charge was error. The jury could
not have lawfully convicted the accused of murder, if he was act-
ing independently when he inflicted the wound, unless they could
find from the evidence that the wound inflicted was the cause of
death.

   *Judgment reversed. All the Justices concurring, except Lumpkin,
P. J., absent, and Candler, J., not presiding.*