MOISE, Justice.
The accused, Felix Espinosa, was prosecuted under a bill of information which charged that he “did wilfully and unlawfully obtain a narcotic drug, to-wit 16 dilaudid tablets by forging a prescription in the name of M. W. Miller and presenting same to Auralia Descauments, Pharmacist, contrary to the form of the Statute of the State of Louisiana * * He was tried and convicted and sentenced to serve ten years in the State Penitentiary. From this conviction and sentence he has appealed.
*523 Defendant bases his appeal on seven bills of exception.
Bill No. 1.
After the swearing of the jury and the reading of the information to them, and before any witnesses were sworn and put on the stand, counsel for the defendant made the following objection:
“That the charge under which it is sought to try your defendant, is an illegal charge under the Law of Louisiana, as under the law of Louisiana the act defines ‘narcotic drugs’ in [LSA-] Revised Statutes 40:961 as follows:
“ ‘Sub-Section 13 — Narcotic Drugs, means coca leaves, opium, canabis, marijuana, isonipecaine, and every substance neither chemically nor physically distinguishable from them.’
“And
“ ‘Sub-Section 15 — Opium includes morphine, codeine, and heroin, and any compound, manufacture, salt, derivative, mixture, or preparation of opium, but does not include apormorphine or any of its salts.’
“That the charge herein which .was that the defendant did
“ ‘Wilfully and unlawfully obtain a narcotic drug, to-wit: 16 dilaudid tablets by forging a prescription in the name of M. W. Miller, and presenting same to Auralia Descauments, Pharmacist’, .
was insufficient under the Law, as this particular drug ‘Dilaudid tablets’ is not defined as a ‘narcotic drug’ by the Law of Louisiana, and therefore that no legal charge was made against the defendant.’’
The trial judge overruled defendant’s objection, stating that if counsel desired to know whether “dilaudid” is a derivative of some particular type of narcotic, a motion for a bill of particulars was the proper procedure. Thereupon, a bill of exception was reserved and the objection and ruling were made a part of the bill.
To be specific, with concrete exaction, the defendant argues that under LSA-Revised Statutes 40:961 ‘dilaudid’ as defined therein is not a narcotic drug.
LSA-R.S. 40:978 which denounces the crime of obtaining or attempting to obtain a narcotic drug by. forgery reads:
“A. No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the adminis; tration of a narcotic drug:
“(1) By fraud, deceit, misrepresen- . tation, or subterfuge; or
“(2) By the forgery or alteration of a prescription or of any written order; or
“(3) By the concealment of a material fact; or
“(4) By the use of a false name or the giving of a false address. * * * .
*525 A bill of particulars calls for specifications. It usually does not cure- a defective indictment or bill of information. State v. Pettifield, 210 La. 609, 27 So.2d 424; State v. Bienvenu, 207 La. 859, 22 So. 2d 196. In the instant case the information is not defective. It sets out that the defendant obtained a narcotic drug, and that the drug was ‘dilaudid’. While a bill of particulars might have been informative, it was not necessary as both the State’s witnesses were qualified to testify — one as to her precautions when selling the narcotic which was sold on prescription only, and the other, as to the contents of the ingredients of the narcotic drug. Therefore, the bill of information was sufficient and the State has fully borne its burden of proving that ‘dilaudid’ is a narcotic drug. State v. Matassa, 222 La. 263, 62 So.2d 609.
Bill No. 2.
This bill was taken to the refusal of the trial judge to instruct the jury that it could bring in a verdict of attempt. '
The statute reads:
“No person shall obtain or attempt to obtain a narcotic drug”. LSA-R.S. 40:978.
The penalties as set out in LSA-R.S. 40:981 are the same for obtaining or attempting to obtain a narcotic drug.
LSA-R.S. 14:27 provides for the crime of Attempt. It prescribes that
“(3) In all other cases he shall be fined or imprisoned, or both, in the same manner as for the offense attempted ; but such fine or imprisonment. shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.”
In State v. Broadnax, 216 La. 1003, 45 So.2d 604, 610, it is stated:
“We do not agree that Section 17 shows any intention of the redactors of the Code to exclude Section 2 of the Uniform Narcotic Drug Act from the application of Article 27.”
In 1952, the Legislature amended the Narcotic Act — Act No. 429 of 1952, LSA-R.S. 40:981. This act provided for a lesser penalty for the crime of attempting to obtain a narcotic drug. The Legislature must have had in mind a reconciliation of Article 27 of the Criminal Code and the Narcotic Act.
Be that as it may, the defendant was charged with obtaining a narcotic, and his confession which was admitted in evidence states that he did obtain the drug through forgery.
The judge’s ruling in refusing this charge was correct.
Bill No. 3.
This bill was taken to the refusal of the trial judge to give the following charge -to the jury:
“I charge you, that in this case, to get a conviction that the State must *527 prove to your satisfaction' and beyond all reasonable doubt the following:
“1. That the alleged dilaudid tablets which the defendant is charged with having secured, actually contained a narcotic drug.
“2. The law defines narcotic drugs as coca leaves, opium, canabis, marijuana, isonipecaine, and every substance neither chemically nor physically distinguishable from them.
“If the State does not prove that these particular 16 tablets contained any of the substances set' forth in the definition which I have just given you, then it will be your duty to find a verdict of ‘Not Guilty’.
“That this defendant himself forged a prescription in order to get these tablets.
“3. That he is the person who actually presented the said prescription and obtained the said tablets.
“If the State fails to prove those things or any one of them, or if you have a reasonable doubt • about either the narcotic in the tablet, or the forgery, or the person of Espinosa, defendant herein, then it would be your duty under the law to give the benefit of such reasonable doubt to the defendant, and find him ‘Not Guilty’.
 This bill is without merit. The general charge covered the matter of the special charge. State v. Rone, 222 La. 99, 62 So.2d 114. The general charge is in the-record. It is comprehensive. The trial judge stated in the body of his charge:
“The narcotic drug alleged here is said to be dilaudid. Whether dilaudid .is a narcotic drug is for you to determine from the facts as you heard them in the case.”
We feel sure that the jury was sufficiently impressed with the burden of determining whether dilaudid was a narcotic.
Bill No. 4.
Bill of Exception No. 4 was taken to the refusal of the trial judge to instruct the jury that it could bring in a verdict of “Guilty of Attempt to obtain Drugs by Forged Prescription”. This bill is without merit and was covered in our discussion of Bill No. 2. The court states that the special charge was not submitted to it, but since we find the bill without merit, there is no need for a consideration of this point.
Bill No. 5.
Bill of Exception No. 5 was taken to the testimony of the witness Auralia Descauments. Defense counsel objected to her testimony for the reason that: -
“1. Miss Descauments was not a chemist.
- “2. Miss ' Descauments had never analyzed any dilaudid tablets.
*529 “3. Any information that Miss Descauments might have had with respect • to dilaudid tablets could not apply to the particular tablets obtained by the defendant.
“4. Any information that she might have was hearsay and inadmissible.”
The trial court, in its per curiam to Bill of Exception No. 3, made the following statements:
• -“Miss Auralia B. Descauments testified that she was a registered pharmacist since 1946, and that she was employed at the Lakeview Pharmacy, 5600 Canal Boulevard, in the City of New Orleans, and was so employed on December 7, 1951.
“That sometime about ten o’clock in the morning of December 7th, the defendant at the bar presented to her a document, being a printed prescription blank in the name of Dr. Morell W. Miller and being made out in the name of F. Ernst, 5645 Milne Street, Calling for sixteen tablets of %a grain of dilaudid. She identified the prescription by- means of her initials, the price charged, and the prescription number which she assigned to this document;
“That the tablets (dilaudid) subsequently obtained from her by the defendant upon the hereinabove described prescription, had been obtained by her from the wholesale drug firm of McKesson and Robbins, upon her filling out and tendering to them an official narcotic form obtained by ' her from the federal narcotic bureau, as provided by law; that upon receiving same as aforesaid, she placed the dilaudid tablets in a narcotic drawer;
“That the sixteen tablets of dilaudid of hypodermic type obtained by the defendant from her, she in turn obtained from the narcotic drawer.
“That she was the sole custodian of the narcotic drawer which she kept under lock and key, and that the dilaudid tablets of hypodermic type handed over by her to the defendant were taken from the original receptacle which she had personally received from McKesson & Robbins, wholesale pharmaceutical dispenser.
“That she attended a four year course at Loyola University College of Pharmacy, and was a graduate thereof, and that she had been certified as a registered pharmacist by the Pharmaceutical Board of the State of Louisiana.”
The trial judge’s per curiam to this bill covers all of the foregoing contentions:
“For the testimony of the witness, a certified pharmacist, see per curiam to Bill of Exception No. 111.
“As the defendant obtained the particular 16 dilaudid tablets from the witness and disposed'of same, it was obviously impossible to have had them *531 analyzed _ for they were last seen in defendant’s possession. Certainly, to impose upon every druggist the necessity of analyzing every narcotic coming into his lawful possession, before he could testify concerning their component parts would lead to a most ludicrous situation.
“The narcotic in question was traced from its source and into the hands of the defendant. This was all the state was called upon to do.”
Bill No. 6.
Bill of Exception No. 6 was taken to the testimony of. Mr. John Danicker, City Chemist. It was urged that Mr. Danicker had never analyzed the dilaudid tablets in question.
In the trial.judge’s'per curiam to Bill of Exception No. 3, it is stated:
“He stated that dilaudid was derivative of morphine, and that in turn morphine was a derivative of opium; that he has on occasion applied certain recognized tests, first to determine whether or not the subject was morphine, and other tests which in turn determined what particular derivative of morphine was present.”
“That, on many occasions he made tests for the presence of the drug .dilaudid.”
It is our opinion that the trial courts ruling-.that - this bill, was without merit for the reasons stated in the per curiam to Bill No. 5, is correct.
Bill No. 7.
Bill of Exception No. 7 was taken to the trial court’s overruling of defendant’s motion for a new trial. This bill is a restatement of the .matters urged in the other bills. No new matter is raised in this bill, and it is therefore without merit. State v. Poe, 214 La. 606, 38 So.2d 359.
Defense counsel then filed a motion in arrest of judgment, alleging that the bill of information sets forth no violation1 of the law of Louisiana. This contention has been disposed of. The trial judge made mo error in overruling the motion. The defendant received a fair trial.
The conviction and sentence are affirmed.