Paul J. Wikmtjz, J.
On March 30, 1959, the Grand Jury of the County of Nassau returned two indictments against the defendant, Terrence F. Wood.
One of the indictments charges two counts of attempted murder in the first degree, two counts of assault in the first degree, and the fifth count charges criminally carrying a loaded pistol.
The other indictment, the one immediately under consideration by this court and the subject matter of this decision, contains two common-law counts of murder in the first degree. The first count charges that on or about March 6, 1959, the defendant ‘1 willfully, feloniously and of malice aforethought, caused the death and killed one George W. Moses with a rifle ” and the second count charges that on the same day and by the same manner and means he caused the death and killed one Archie Lee.
The defendant has moved for an inspection of the Grand Jury minutes preliminary to a motion to set aside the murder indictment on the ground that it is unwarranted by the evidence before the Grand Jury, and that as an alternative, the court personally inspect said minutes. In view of the other indictment pending against the defendant, the court has adopted the alternative course suggested and an inspection of said minutes discloses that the deaths of George W. Moses and Archie Lee came about in the manner following:
*895 Early in the morning of March 6, 1959, Terrence Wood became involved in an argument with one Yernon Gray inside a bar and grill, known as “ Gibson’s Pish and Chips ” and located on the southerly side of Northern Boulevard in Manhasset in this county. The owner of the establishment, Benny Gibson, interrupted the argument and directed both Wood and Gray to leave the premises whereupon each removed himself to the sidewalk abutting the tavern. There, amidst a crowd of tavern patrons and others, Wood continued his argument with Gray, whereupon Wood drew an automatic pistol from his pocket and fired into the crowd. Two of the shots discharged by Wood struck Yernon Gray, who dropped to the ground, seriously wounded.
During the course of this altercation but prior to any shooting, Nassau County patrolman Robert Wagner, who was on foot patrol, observed the group from the northerly side of Northern Boulevard and proceeded to cross the Boulevard to inquire into the disturbance. While Wagner was crossing the street, the initial shots were fired by Wood at Gray. Wagner then drew his service revolver and before he did any shooting, he was observed by Wood, who thereupon fired upon Wagner. An exchange of shots between Wood and the patrolman ensued during which it is alleged that a cry for help arose from the crowd, which cry was heard by Benny Gibson, the tavern owner. After the exchange of fire between Wood and Wagner and while Wagner was seeking to reload his pistol, Wood attempted to flee from the scene by jumping into an awaiting automobile which was driven by one Archie Lee, one of Wood’s companions for the evening. The getaway car headed in a westerly direction on Northern Boulevard and an exchange of shots continued between the occupants of the car and Wagner who was still stationed on the sidewalk. During the course of the exchange, Benny Gibson, in response to the cries for help, had emerged from his tavern armed with a rifle and had taken up a position on the southern side of the street some distance apart from the patrolman. Gibson then commenced to fire his rifle in the direction of the fleeing automobile, which suddenly came to a halt on the opposite side of the road, approximately 300. feet from the tavern. As the get-away car pulled to a halt, Archie Lee jumped from the driver’s side of the car, whereupon he was caught in the crossfire and was mortally wounded. Immediately thereafter, the get-away car again pulled away from the scene in a westerly direction.
There was then discovered not only the mortally-wounded body of Archie Lee but also the body of one George Moses, a *896 bystander who happened to have been in the vicinity where the get-away car had initially stopped. Moses apparently had rnn toward the car during the course of the shooting and he, too, was caught in the crossfire and killed instantly. Archie Lee was removed to a hospital where he expired shortly thereafter. A subsequent examination of the victims’ bodies revealed that both Lee and Moses died from wounds inflicted by bullets from the rifle which Gibson admittedly had fired. None of the shots fired by either Wagner or Wood contributed to the deaths of either of the victims. Vernon Gray, who was taken to a hospital for treatment, subsequently survived.
From the foregoing facts, it must necessarily be concluded:
1. That said homicides were caused by the well-intentioned, perhaps, but tragic and gratuitous intervention of Gibson;
2. That when Gibson fired the fatal shots that directly caused these homicides, the defendant Wood was engaged in the commission of a felony; and, finally
3. Gibson was not an accomplice of Wood, was not acting in concert with him, nor was he in any way connected or related to him in the commission of said felony.
The finding of this indictment under the foregoing circumstances is unique and the reports fail to disclose any precedent in this State.
The common-law felony murder which provided that one is guilty of murder when death proximately results during the commission of any felony committed by the accused (the necessary intent being supplied by the legal fiction of implied malice) has undergone a tortuous and somewhat vacillating course in its development. Starting with Lord Coke during an age when all felonies brought retribution by the penalty of death (3 Stephen, History of the Criminal Law of England [1883] p. 57) the felony-murder concept has been steadily whittled away by reason of the rigor of its application. Through the years, legal authorities have voiced disapproval with the prevailing common-law concept for two reasons: first, because of the harshness created in those instances where death was remotely the proximate result of the perpetration of the felony and, second, because the underlying felony was not such a crime as to permit the anticipation of violence resulting in death (see: 1937 Report of N. Y. Law Rev. C'omm., pp. 646-676).
The law of homicide in the course of the commission of a felony was finally codified in this State in 1829 (Rev. Stat. of N. Y., 1829, part IV, ch. 1, tit. 1, § 5, subd. 3). Thereafter that statute was the subject of frequent amendment, and subdivision *897 2 of section 1044 of the Penal Law now reads, in part, as follows: ‘ ‘ The killing of a human being * * * is murder in the first degree, when committed * * * by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise” (emphasis supplied). The very wording of this codification indicates an intent on the part of the Legislature to lessen the rigor of the common-law concept of felony murder.
Modification has also been accomplished by a variety of restrictive statutes in other States. In New York, the limit of criminal responsibility for a homicide arising during the commission of a felony has been restricted to those cases only wherein the homicide is directly caused by one actually engaged in the perpetration of the felony, i.e., where the fatal wound is inflicted by the felon or an accomplice during the course of the commission of the felony (see People v. Giro, 197 N. Y. 152).
V~Many other States have accomplished modification of the felony-murder concept by specifically limiting the felonies involved. In the majority of these States the underlying felonies are, in the main, crimes of violence against the person (e.g., arson, rape, riot, robbery and burglary) where reasonable foreseeability indicates that serious harm might flow as a natural consequence therefrom, j Where a lesser felony is the underlying crime, a lesser degree of murder or manslaughter is provided. Thus, whether the codification be by way of specifying ■'ofiíy a felony of violence, as distinguished from a nonviolent felony, or where the legal limit of criminal responsibility is fixed by restricting the theory of proximate causation, all of the statutes involved curtail the broad and rigorous application of common-law felony murder. The result is the prevention of the stringent results which could conceivably flow if the common-law.concept were left unbridled.
The People rely mainly on precedents in other jurisdictions to . sustain the indictment herein. In none of these States wherein the People seek to draw an analogous situation does there exist a statute similar to the New York codification.
A very scholarly discussion of the distinctions that exist in the decisions and statutes of our sister States is contained in Commonwealth v. Almeida (362 Pa. 596). 'At page 627, the learned court points up the distinction between the New York statute and the Pennsylvania statutory definition of felony murder by stating as follows: “ The New York statutory definition of felony murder differs from the Pennsylvania statutory definition. The New York statute reads as follows: ‘ The killing *898 of a human being * * * is murder in the first degree, when committed * * * by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise * * * * * The phrase ‘ by a person ’ noes not appear in the Pennsylvania statute, and these words make a vital difference in the two statutes.”
Again, importance is placed on these very same words, where, on page 655 of the Law Revision Commission Report of 1937 {supra), the following is stated: “ The language of the statute has always been clear, too, in requiring a temporal relation between the homicide and the underlying felony. The relevant words in the present provision are ‘ by a person engaged in the commission of, or in an attempt to commit a felony.’ ”
The highest court in this State in People v. Udwin (254 N. Y. 255) is controlling herein and compares favorably with the conclusions reached in the States of Massachusetts in Commonwealth v. Campbell (7 Allen [89 Mass.] 541) and North Carolina in State v. Oxendine (187 N. C. 658) which cites the Campbell case {supra) with approval. In the Udwin case {supra) the defendants were convicted of a felony murder arising out of the following facts: The defendants, inmates of Auburn Prison in concert with other inmates, made an attempt to escape therefrom in violation of section 1695 of the Penal Law. During the attempted escape and in the course of gun fire between the guards and the escaping prisoners, Sullivan, an inmate, was killed.
In the Court of Appeals the case hinged on the sufficiency of the evidence against the defendants. The pivotal question was, as posed by the court {People v. Udwin, 254 N. Y. 255, 260, supra) “ Did the bullet which killed Sullivan proceed from a pistol fired by an officer, or by a convict? ” And again the court said (p. 262) : “ By a process of exclusion, therefore, the jury was justified in reasoning to the conclusion that the shot which killed Sullivan was not discharged from an officer’s pistol, but from a gun possessed by one of the group of convicts in the guard room. In this respect their finding of guilt was sanctioned by the law of the case as stated by the trial justice: ‘ It is not necessary that the People establish that the shot which killed Sullivan was fired by any of the defendants but it must be established beyond a reasonable doubt that the shot which killed Sullivan was fired by one of the convicts engaged with the defendants, or some of them, in a common purpose or design to unlawfully and feloniously escape.’ ”
The People argue that this case is not controlling because the court does not deal directly with the issue of law involved *899 herein. The court cannot accept this contention for implicit in the court’s findings when it resolved this crucial question of fact was:
1. That if the guards killed Sullivan, although the chain of events leading to the killing was set in motion by the defendants, or their confederates, the defendants could not be found guilty.
2. Conversely, if Sullivan was killed by the defendants, or their confederates, the defendants would be guilty as having done the deed actually or constructively.
From the uncontradicted and unexplained testimony that this court must necessarily utilize in its determination, it appears that death was inflicted upon Moses and Lee by Gibson who was not in the process of committing a felony, was not an accomplice or principal as defined by section 2 of the Penal Law, and since the deaths may not be attributed to the acts of the defendant Wood, the indictment is accordingly dismissed.
Settle order on notice.