CASE 12. — PROSECUTION AGAINST JOHN MOORE AND
ANOTHER FOR MURDER.—September 27.

## Commonwealth v. Moore, &c.

Appeal from Knott Circuit Court.

A. J. KIRK, Circuit Judge.

Indictment dismissed and Commonwealth appeals.
Affirmed.

1. Criminal Law—Indictments—It appearing in defense of his
   house from robbery by defendants, the owner accidentally
   shot and ·killed an innocent bystander, the demurrer to the
   indictment which charged appellees with the murder of the
   bystander was properly sustained and the indictment prop-
   erly dismissed.

2. Same—In order that one may be guilty of homicide he must
   do the act actually or constructively, that is, he must do it,
   or it must be done by some one acting in concert with him.

N. B. HAYS, Attorney General, and C. H. MORRIS for appellant.

If appellees conspired and undertook to connect a felony—
such as robbery—with murder, if necessary, it must be taken
on principle that they reasonably contemplated such a result as
that the assailed person would defend himself, if he could; and
if in so doing he killed a third person the authority cited below,
with good reason, indicates that the confederates are guilty of
murder, although the killing of the third person was outside
of the common design, and not intended as the result of the fe-
lonious act. (2 Wharton, sec. 998.)

OPINION BY JUDGE BARKER—Affirming.

The appellees, John Moore and John Kelly, were
indicted by the grand jury of Knott county, charged
with the offense of willful murder. As the question
of law arising upon the face of the indictment has

never been adjudicated in Kentucky, we give the indictment in its entirety: "The grand jury of Knott county, in the name and by the authority of the Commonwealth of Kentucky, accuse John Moore and John Kelly of the crime of willful murder committed as follows: The said defendants, on the 20th day of March, 1905, in the county and circuit aforesaid, did unlawfully, willfully, maliciously, feloniously, and of their malices aforethought, kill, slay and murder Anderson Young, by causing said Young to be shot with a rifle gun, loaded with powder and leaden ball or other hard and explosive substances. The said gun was at the time in the hands of John Young, who at the time being assaulted by the defendant, John Moore, with the felonious intent to rob and kill the said John Young, who shot or discharged the said gun at said Moore in his necessary self-defense and in the defense of his house, and killed the said Anderson Young. The said defendants unlawfully, willfully, feloniously did conspire, band and confederate themeslves together for the pur-. pose of committing robbery upon the person of John Young, and in pursuance of said conspiracy and confederacy, and while the same was existing, the said defendant, John Moore, willfully, maliciously and feloniously went to the house of said John Young and assaulted and robbed the said Young, and the said Young, in order to defend himself and his house from the unlawful acts of said Moore, he shot and killed the said Anderson Young, as aforesaid; that the said defendant, John Kelly, did willfully, feloniously and of his malice aforethought, counseled, advised and encouraged the said defendant, Moore, to commit said robbery against the peace and dignity of the Commonwealth of Kentucky."

A general demurrer to the indictment was interposed by the defendants and sustained by the court, and the indictment dismissed, from which judgment the Commonwealth appeals.

It is unquestionably true that, where two or more persons conspire or confederate together to commit a felony, each is criminally responsible for every crime committed by his co-conspirators done in pursuance of the original conspiracy, and which naturally or reasonably might be anticipated to result from it. Therefore, if either of the defendants, in attempting to commit the robbery for which they conspired, had shot and killed John Young, or had shot at John Young and, missing him, had killed a bystander, both would have been guilty of murder.

In 1 Hale, Pleas of the Crown, 441, the rule is thus stated: "If divers persons come in one company to do any unlawful thing, as to kill, rob or beat a man, or to commit a riot, or to do any other trespass, and one of them in doing thereof kill a man, this shall be adjudged murder in them all that are present of that party abetting him and consenting to the act or ready to aid him, although they did but look on."

And in 1 East, Pleas of the Crown, 257, it is said: "Where divers persons resolve generally to resist all opposers in the commission of any breach of the peace, and to execute it with violence, or in such a manner as naturally tends to raise tumults and affrays, as by committing a violent dissension with great numbers, or going to beat a man, or rob a park, or standing in opposition to the sheriff's posse, they must at their peril abide the event of their actions."

But this is not the case we have at bar. Here the homicide was not committed by the conspirators,

either in the pursuance of the conspiracy or at all;
but it was the result of action on the part of John
Young, the proprietor of the house, in opposition
to the conspiracy, and entirely contrary to the
wishes and hopes of the conspirators. In order that
one may be guilty of homicide, the act must be done
by him actually or constructively, and that can not
be, unless the crime be committed by his own hand,
or by the hands of some one acting in concert with
him, or in furtherance of a common object or pur-
pose. The defendants can in no sense be said to
have aided or abetted John Young, for he was fir-
ing at them; and to hold them responsible crimi-
nally for the accidental death of a bystander, grow-
ing out of his bad aim, would be carrying the rule
of criminal responsibility for the acts of others be-
yond all reason. Suppose, instead of killing an in-
nocent bystander, Young had killed Moore, one of
the robbers, would the survivor have been guilty
of murder? And yet, if the principle sought to be
maintained by the Commonwealth be sound, the
survivor would necessarily be guilty of murder, be-
cause the owner of the house to be robbed had
killed his companion, for he could just as truly be
said to have aided and abetted the owner of the
house in that case as in this. Indeed, the matter
could be carried still further. The dead robber
would also be guilty of murder, because his part in
the causation of the homicide of which he was the
victim would have been precisely the same as that
which resulted in the death of Anderson Young. In
other words, the acts of the defendants provoked
and justified the shooting on the part of John
Young, and if they are criminally responsible for
the accidental death of a bystander shot by Young,
they would also be guilty of murder if he had killed

one of themselves. The illustration carried to this extreme exposes the unsoundness of the position of the Commonwealth in the matter in hand.

While, as we have heretofore said, this is a question of first impression in Kentucky, we are not without high authority in support of the position we seek to maintain in this opinion.

In the case of Commonwealth v. Campbell, 7 Allen, 541, 83 Am. Dec., 705, it appears that the defendants had conspired to create a tumult or riot, and in quelling it the officers by accident killed an innocent bystander. In a learned opinion the Supreme Court of Massachusetts held that the conspirators were not guilty of murder, and in the argument the identical case we have here is supposed and used to illustrate the unsoundness of the position of the Commonwealth of Massachusetts in regard to the guilt of the parties. Said the court: "Suppose, for example, a burglar attempts to break into a dwelling house, and the owner or occupant, while striving to resist and prevent the unlawful entrance, by misadventure kills his own servant, can the burglar in such case be deemed guilty of criminal homicide? Certainly not./The act was not done by him, or with his knowledge or consent; nor was it a necessary or natural consequence of the commission of the offense in which he was engaged. He could not, therefore, have contemplated or intended it."

In the case of Butler v. People (Ill.), 18 N. E., 338, 1 L. R. A., 211, 8 Am. St. Rep., 423, several had banded themselves together to create a riot at a circus in Prairie City. The four defendants attacked the city marshal, and made it necessary for him in self-defense to fire at his assailants, and in so doing he missed them and killed an innocent bystander.

The Supreme Court of Illinois reversed a judgment of conviction against the conspirators had under these facts, holding that the death of the bystander was not within the scope of the original conspiracy, but in opposition to it, and, therefore, the defendants were not guilty.

In Bishop's New Criminal Law, vol. 1, sec. 637, it is said: "If those suppressing a riot accidentally kill an innocent third person, the rioters are not guilty of the homicide; for in no way did they concur in or encourage the act which caused death."

No authority is cited in support of the opposing principle, and we therefore deem, both in reason and authority, the judgment of the circuit court dismissing the indictment must be affirmed, and it is so ordered.