STATE v. WALTER OXENDINE, CLARENCE OXENDINE, DOCK WILKINS, AND PROCTOR LOCKLEAR.

(Filed 30 April, 1924.)

**1. Criminal Law—Homicide—Intent—Evidence—Accident.**

Where two or more conspire together and are the aggressors in a resulting fight with firearms, and in consequence their adversary unintentionally kills an innocent bystander, his antagonists are not responsible for the killing, and cannot be lawfully convicted of the homicide, as there was no concerted action by them in that respect.

2. **Criminal Law—Secret Assault—Statutes—Instructions—Appeal and Error.**

   While it is not required for the conviction of a secret assault, under the provisions of C. S., 4213, that the assailed should not have been aware of the presence of his assailant, it is necessary that the purpose of the assailant be not previously made known to him; and where the evidence does not tend to show that it was a secret assault, within the intent and meaning of the statute, an instruction to the contrary is reversible error.

3. **Criminal Law—Forcible Trespass—Evidence.**

   Where there is evidence that the defendant, indicted with others for forcible trespass, was present and acting in concert with another, who forced his way into a dwelling and took by force an occupant therefrom, and thereafter helped force him into the yard, he is guilty of the offense charged in unlawfully invading the possession of another by being present and violently assisting with a strong hand.

APPEAL by Walter Oxendine from *Long, J.,* at November Special Term, 1923, of ROBESON.

Criminal prosecutions, tried upon three indictments. All three of the cases having grown out of the same transaction and occurring at the same time and place, on motion of the solicitor, they were consolidated and tried before the same jury, the defendants not objecting.

1. In the first bill, Dock Wilkins, Clarence Oxendine, and Walter Oxendine were charged with a forcible entry and detainer upon the premises of one Donnie Locklear. On this bill there was a general verdict of "guilty" as to all the defendants.

2. In the second bill, Walter Oxendine, Clarence Oxendine, and Dock Wilkins were charged with a secret assault upon Proctor Locklear. On this bill there was a general verdict of "guilty" as to all the defendants.

3. In the third bill, Dock Wilkins, Walter Oxendine, Clarence Oxendine, and Proctor Locklear were charged with murdering one Robert Wilkins. On this bill there was a general verdict of "guilty of manslaughter" as to all the defendants.

All of the defendants were sentenced in each of the three cases. Walter Oxendine alone appeals. He was ordered to be confined in the common jail of Robeson County and assigned to work upon the public roads for a term of four years for manslaughter, twelve months for forcible trespass, and twelve months for secret assault, each of the last two sentences to begin at the expiration of the preceding one, making a total of six years on the three indictments. From these judgments the defendant Walter Oxendine appeals, assigning errors.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Britt & Britt and McKinnon, Fuller & McKinnon for appellant.*

STACY, J.   A brief statement of the facts is necessary to a proper understanding of the legal questions presented by the appeal.

There was evidence offered by the State tending to show that on Christmas night, 25 December, 1922, Proctor Locklear, Zack Brooks, and Bert Locklear called at the house of Donnie Locklear to pay Donnie and her three daughters a social visit.   While there—about 8 or 9 o'clock in the evening—they heard Walter Oxendine, Clarence Oxendine, and Dock Wilkins coming down the road, singing, hollering and cursing loud enough to be heard a distance of approximately forty yards away. These parties stopped in front of Donnie Locklear's house and stood there for a few minutes, talking with each other in low tones.   The inmates of the house recognized them by their voices.   Presently, Dock Wilkins, who was under the influence of strong drink, and cursing quite boisterously, rushed against the door and pushed it open, went inside, and pulled Proctor Locklear out into the yard and around the house. Walter and Clarence Oxendine did not go into the house, but they followed Dock Wilkins, after he had come out of the house, and assisted him in taking Proctor Locklear into the back yard.   There was testimony that some one of the three exclaimed, with a number of oaths and epithets, "He is the man we are after; kill him!"

The other persons who were in the house at the time made a hasty exit, and were on their way to Bert Locklear's home, some 200 yards away, when shots were heard in Donnie Locklear's back yard.

In the meantime, Robert Wilkins, who had not been in Donnie Locklear's house at any time during the evening, and whose presence in the neighborhood was apparently unknown to every one, walked around the house and into the back yard to see what all the trouble was about. He had a shotgun on his shoulder, and Clarence Oxendine tried to take it away from him.   While Robert Wilkins and Clarence Oxendine were tussling over the shotgun, Walter Oxendine and Proctor Locklear began shooting at each other with pistols.   Walter Oxendine fired one shot, and Proctor Locklear two.   One of the shots fired by Proctor Locklear struck Robert Wilkins and killed him.

The defendants, on the other hand, tell quite a different story.   Their testimony is to the effect that they were out "holieving" on Christmas night, going from place to place, turning out people's stock, putting wagons on their porches, etc., which, they contend, is a custom of Christmas celebration among the Cherokee Indians of Robeson County.   When they came to the home of Donnie Locklear, Dock Wilkins, who was drinking quite heavily, rushed against the door, pushed it open and went on the inside.   In a few minutes he and Proctor Locklear came out of the house and they all engaged in a tussle, but without any ill-will towards Proctor, as they had nothing against him and did not even

know beforehand that he was in the county, he being a resident of Hoke County and only visiting in the community.

While they were tussling in the yard, Walter Oxendine fired his pistol into the ground and Proctor Locklear ran away and across the field, but no effort was made to shoot him or to follow him. Thereafter, Walter and Clarence Oxendine, Dock Wilkins and Robert Wilkins, who came up about that time, all walked down the road together and Walter told Dock he had not acted properly at Donnie's house and that he should go back and apologize. Dock was too drunk to apologize and so Robert Wilkins said he would go back and make amends for him. This he started to do. Robert Wilkins had not been gone but a few minutes when two pistol reports were heard and Robert began shouting and exclaiming, "Proctor Locklear has shot me." At least 10 or 15 minutes had elapsed between the time when they left the house and Robert Wilkins returned to apologize for Dock's conduct.

As bearing upon the indictment for murder, the court, among other things, charged the jury as follows:

"If the evidence satisfies you beyond a reasonable doubt that the defendants, Walter and Clarence Oxendine and Dock Wilkins, provoked the difficulty and are responsible for the fight that ensued, and that Proctor Locklear was not at fault, and that the deceased walked up while the fight was in progress, but did not participate in the same, and was struck by a stray bullet and suffered wounds from which he afterwards died, then under such circumstances the court charges you that the defendants, Clarence Oxendine, Walter Oxendine and Dock Wilkins, would be guilty of manslaughter and it would be your duty to so find."

The defendants except to this instruction and assign same as error. We think the exception is well taken and must be sustained.

It is unquestionably the law that where two or more persons conspire or confederate together or among themselves to commit a felony, each is criminally responsible for every crime committed by his coconspirators in furtherance of the original conspiracy, and which naturally or reasonably might have been anticipated as a result therefrom. And in the instant case, if the deceased had been killed by a shot from Walter Oxendine's pistol, each and every one of his confederates would have been equally responsible with him for the homicide. But Walter Oxendine and Proctor Locklear were not acting in concert; they were adversaries; and it is the general rule of law that a person may not be held criminally responsible for a killing unless the homicide were either actually or constructively committed by him; and in order to be his act, it must be committed by his own hand, or by some one acting in concert with him, or in furtherance of a common design or purpose.

As said in *Butler v. The People,* 125 Ill., 641: "Where the criminal liability arises from the act of another, it must appear that the act was done in furtherance of the common design or in prosecution of the common purpose for which the parties were assembled or conspired together."

Suppose, instead of killing an innocent bystander, Proctor Locklear had killed Dock Wilkins, one of his assailants, would the law, under these circumstances, hold the surviving assailants or confederates of Dock Wilkins criminally responsible for the homicide? We think not. Each took his own chance of being injured or killed by Proctor Locklear when the three made a common assault upon him. They would be responsible for what they did themselves, and such consequences as might naturally flow from their acts and conduct; but they never advised, encouraged or assented to the acts of Proctor Locklear, nor did they combine with him to do any unlawful act, nor did they, in any manner, assent to anything he did, and hence they could not be responsible for his conduct towards the deceased. *Com. v. Moore,* 88 S. W. (Ky.), 1085.

In the case of *Com. v. Campbell,* 7 Allen, 541, a number of persons had conspired to create a tumult or riot, and in quelling it the officers by accident killed an innocent bystander. In a learned opinion, the Supreme Judicial Court of Massachusetts held that the rioters or conspirators were not guilty of murder; and, in the argument, used the following illustration: "Suppose, for example, a burglar attempts to break into a dwelling-house, and the owner or occupant, while striving to resist and prevent the unlawful entrance, by misadventure kills his own servant. Can the burglar in such case be deemed guilty of criminal homicide? Certainly not. The act was not done by him, or with his knowledge or consent; nor was it a necessary or natural consequence of the commission of the offense in which he was engaged. He could not therefore have contemplated or intended it."

For the error, as indicated, the appealing defendant is entitled to a new trial on the charge of culpable homicide.

The cases of *S. v. Sisk,* 185 N. C., 696, *S. v. Dalton,* 178 N. C., 779, and *S. v. Lilliston,* 141 N. C., 857, in no way conflict with our present position.

Touching the indictment for secret assault, his Honor instructed the jury as follows:

"Now what is the truth of the matter, reviewing all the evidence, the evidence of the State and the evidence of the defendants, are you satisfied and beyond a reasonable doubt that they committed an assault upon Locklear and with intent to kill him? If you are satisfied of this and beyond a reasonable doubt, you will convict; otherwise, you will acquit.

However, if you fail to find that they committed an assault and in a secret manner or by waylaying Proctor Locklear, nevertheless if you find that they did assault him and with intent to kill him, why you will find such of them as you find did this with intent to kill him, you will find them guilty."

We think this instruction must be held for error on defendant's exception. The language of the statute is that if any person shall, in a secret manner, maliciously commit an assault and battery, with any deadly weapon, upon another, by waylaying or otherwise, with intent to kill such other person, notwithstanding the person so assaulted may have been conscious of the presence of his adversary, he shall be guilty of a felony, etc. C. S., 4213. It is not essential to a conviction for a secret assault, under the statute as now written, that the person assaulted should be unconscious of the presence of his adversary; but his purpose must not be known, for in that event the assault would not have been committed in a secret manner. *S. v. Bridges,* 178 N. C., 733. It will be observed that under the instruction excepted to the element of "in a secret manner, by waylaying or otherwise," was eliminated from the charge. This, no doubt, was an inadvertence, his Honor probably thinking for the moment that the defendant was indicted for an assault with a deadly weapon with intent to kill, resulting in serious injury, as condemned by C. S., 4214.

It follows that the appealing defendant must be awarded a new trial on the charge of secret assault.

The record discloses no error committed on the trial in regard to the charge of forcible trespass. The offense of forcible trespass is defined in some of the cases to be the unlawful invasion of the possession of another, he being present, violently or with a strong hand. *S. v. Tolever,* 27 N. C., 452; *S. v. McCauless,* 31 N. C., 375; *S. v. Laney,* 87 N. C., 535. The high-handed manner of the invasion may be by a multitude of people or with weapons. *S. v. Ray,* 32 N. C., 29; *S. v. Armfield,* 27 N. C., 207; *S. v. McAdden,* 71 N. C., 207; *S. v. Barefoot,* 89 N. C., 565. The force is sufficient if the party in possession must yield to avoid a breach of the peace. *S. v. Pollok,* 26 N. C., 305. All the elements necessary to constitute the offense of forcible trespass are present in the instant case, and we have found no ruling or action on the part of the trial court which we apprehend should be held for reversible error in regard to this charge.

On the charge of forcible trespass

No error.

On the charges of secret assault and culpable homicide

New trial.