STATE OF NORTH CAROLINA v. CALVIN ANTONIO BONNER AND RONALD WAYNE WITHERSPOON

No. 83A91
No. 85A91

(Filed 10 January 1992)

**Homicide § 21.6 (NCI3d) — felony murder — killing by officer resisting defendants — judgment vacated**

The trial court erred by denying defendants' motions to withdraw their pleas of guilty of first-degree murder based

STATE v. BONNER

[330 N.C. 536 (1992)]

on the deaths of two co-felons at the hands of an officer during an armed robbery. Although defendants engaged in reckless and dangerous conduct, neither they nor their accomplices committed the fatal act; instead, an officer, an adversary to defendants and their accomplices, was responsible for the deaths. Thus, under the rule of *State v. Oxendine*, 187 N.C. 658, there can be no criminal liability for felony murder in this case.

**Am Jur 2d, Homicide §§ 24, 46, 134, 135.**

APPEAL of right pursuant to N.C.G.S. §§ 7A-27(a) and 15A-1444(e) from judgments entered by *Freeman, J.*, at the 10 December 1990 Criminal Session of Superior Court, FORSYTH County, sentencing defendants to imprisonment for life upon their pleas of guilty to charges of first-degree murder. Heard in the Supreme Court 12 September 1991.

*Lacy H. Thornburg, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*Danny R. Ferguson for defendant-appellant Bonner.*

*Richard D. Ramsey and Thomas G. Taylor for defendant-appellant Witherspoon.*

WHICHARD, Justice.

On 29 May 1990, defendants undertook, along with Gregory Gainey and El'Ricko Stewart, to rob the Steamboat Restaurant in Winston-Salem, North Carolina. In an attempt to thwart the robbery, Dallas Pruitt, an off-duty police officer acting as a security guard for the restaurant, shot and killed Gainey and Stewart. Following indictment, defendants pled guilty to, among other charges, two counts of first-degree murder for the deaths of their coconspirators.

The issue is not whether these defendants may escape altogether criminal liability for their participation in the events of 29 May 1990; instead, the narrow issue is whether the common law theory of felony murder, as preserved in N.C.G.S. § 14-17, will be extended to cover situations such as this, so that cofelons may be charged with first-degree murder as a result of the deaths of their accomplices at the hands of an adversary to the crimes. Based on longstanding precedent from this Court, and in accordance with the overwhelming majority of jurisdictions that have addressed

this issue, we hold that there is no felony murder liability on the facts of this case.

Defendants were indicted on two counts of first-degree murder for the deaths of two cofelons arising out of the armed robbery of the Steamboat Restaurant in Winston-Salem. Each defendant filed a motion to dismiss the murder charges, alleging that the felony murder rule is inapplicable to the facts underlying the deaths. Following denial of these motions, defendants each pled guilty to two counts of first-degree murder and the underlying felony of armed robbery, one count of conspiracy to commit armed robbery, one count of assault with a deadly weapon with intent to kill inflicting serious injury, and several additional counts of armed robbery unrelated to the felony murder charges.

As to both defendants, the trial court consolidated for judgment the two counts of first-degree murder, each defendant receiving a sentence of life imprisonment. The trial court arrested judgment on the underlying armed robbery charges, but sentenced each defendant to a forty-year term of imprisonment, to commence at the end of the life sentence for murder, for the remaining counts of armed robbery and conspiracy to commit armed robbery. In addition, the trial court ordered twenty-year sentences for each defendant, to commence at the end of the forty-year sentences, for the assault charges.

On 10 December 1990, each defendant filed a motion to withdraw his pleas of guilty to the two counts of first-degree murder. The trial court denied these motions, and each defendant appealed.

The facts underlying the pleas of guilty to first-degree felony murder are not in dispute. Around 9:00 p.m. on the evening of 29 May 1990, El'Ricko Stewart and Gregory Gainey, armed and dressed in black "Ninja" outfits, came in the front entrance on the east side of the Steamboat Restaurant. Sergeant Dallas Pruitt, an off-duty officer with the Winston-Salem Police Department who was working as the restaurant's security guard, was seated in the area near the main cash register. When Stewart entered the restaurant he saw Sergeant Pruitt and shot him in the chest. The force of the gunshot knocked Pruitt to the ground. Pruitt then tried to draw his revolver and Stewart fired a second shot, striking Pruitt in the right arm. Though seriously injured, Pruitt was able to fire a deadly shot into Stewart, his assailant.

STATE v. BONNER

[330 N.C. 536 (1992)]

Gregory Gainey, dressed and armed similarly to Stewart, then approached Sergeant Pruitt. Pruitt fired one shot which struck Gainey, but Gainey continued his approach. Pruitt then fired a second shot, and Gainey fell to the floor near his feet.

While Sergeant Pruitt defended the main entrance of the restaurant, in the process fatally wounding his assailants, defendants went to the west or "take-out" entrance on the other side of the restaurant. Though Pruitt never saw defendants, they were armed and dressed in similar fashion to their cofelons, Gainey and Stewart. Defendants forced their way to the "take-out" register, took $334.38, and fled.

Each defendant gave the police a written statement admitting his participation in the planned armed robbery and confirming the planned participation of Stewart and Gainey. Autopsy reports revealed that Stewart and Gainey died as a result of the gunshots fired by Sergeant Pruitt.

Defendants assign as error the trial court's denial of their motions to withdraw their pleas on the grounds that there was no factual basis to support the convictions for first-degree felony murder. We hold that this assignment of error has merit.

The resolution of this issue is controlled by the principles enunciated in *State v. Oxendine*, 187 N.C. 658, 122 S.E. 568 (1924). In *Oxendine*, three men — Walter Oxendine, Clarence Oxendine, and Dock Wilkins — feloniously instigated a violent altercation with Proctor Locklear. The altercation escalated to gunplay, and Robert Wilkins, an armed bystander, was killed as a result of a shot fired by Proctor Locklear. The trial court gave an instruction that permitted the jury to convict Walter Oxendine of manslaughter regardless of whether the fatal shot was fired by Oxendine or his accomplices, or by Proctor Locklear. In reversing the conviction of manslaughter, this Court said:

> It is unquestionably the law that where two or more persons conspire or confederate together or among themselves to commit a felony, each is criminally responsible for every crime committed by his coconspirators in furtherance of the original conspiracy, and which naturally or reasonably might have been anticipated as a result therefrom. And in the instant case, if the deceased had been killed by a shot from Walter Oxendine's pistol, each and every one of his confederates would

have been equally responsible with him for the homicide. But Walter Oxendine and Proctor Locklear were not acting in concert; they were adversaries; and it is the general rule of law that a person may not be held criminally responsible for a killing unless the homicide were either actually or constructively committed by him; and in order to be his act, it must be committed by his own hand, or by some one acting in concert with him, or in furtherance of a common design or purpose.

*Id.* at 661, 122 S.E. at 570. Thus, the Court stated the general principle of accomplice liability and noted that had defendant Walter Oxendine, his accomplice, or his agent fired the fatal shot, there would be no question that all the participants would be responsible for the homicide. However, the general rule did not apply on the facts of *Oxendine* because Proctor Locklear, Oxendine's adversary, fired the deadly round. Therefore, the Court noted that a different general rule applied, *i.e.*, that criminal responsibility for a homicide is dependent on proof that the defendant or his agent did the killing. Because, as the Court said, "Walter Oxendine and Proctor Locklear were not acting in concert; they were adversaries," the instruction allowing defendant Walter Oxendine's conviction was fatally flawed and he was entitled to a new trial. *Id.*

As an example of the general rule applicable under the facts of *Oxendine*, the Court quoted the following from *Butler et al. v. The People*, 125 Ill. 641, 645, 18 N.E. 338, 339 (1888): " 'Where the criminal liability arises from the act of another, it must appear that the act was done in furtherance of the common design or in prosecution of the common purpose for which the parties were assembled or conspired together.' " *Id.* In *Butler*, the court reversed a conviction for manslaughter where the defendant, along with several others, resisted arrest for disturbing the peace and in the process the village marshal drew his revolver and accidentally shot a bystander. The court in *Butler* also said:

It would be a strange rule of law, indeed, to hold a man liable for a crime which he did not commit, which he did not advise, and which was committed without his knowledge or assent, express or implied; and yet, if the conviction in this case is to be sustained, it can only be done by the sanction of such a doctrine.

*Butler et al. v. The People*, 125 Ill. at 646, 18 N.E. at 340.

In further illustrating its rationale for reversing Walter Oxendine's manslaughter conviction, the Court in *Oxendine* described the following hypothetical:

> Suppose, instead of killing an innocent bystander, Proctor Locklear had killed Dock Wilkins, one of his assailants, would the law, under these circumstances, hold the surviving assailants or confederates . . . criminally responsible for the homicide? We think not. Each took his own chance of being injured or killed by Proctor Locklear when the three made a common assault upon him. They would be responsible for what they did themselves, and such consequences as might naturally flow from their acts and conduct; but they never advised, encouraged or assented to the acts of Proctor Locklear, nor did they combine with him to do any unlawful act, nor did they, in any manner, assent to anything he did, and hence they could not be responsible for his conduct towards the deceased.

*State v. Oxendine*, 187 N.C. at 662, 122 S.E. at 570. The Court's hypothetical is directly on point with the facts in the case at bar. As in the *Oxendine* hypothetical, the defendants here were aggressors who created a dangerous situation leading to a deadly response by Sergeant Pruitt. Though the hypothetical in *Oxendine* is technically dicta and does not bind the Court in this case, the reasoning apparent in the resolution of the hypothetical discloses the basis for the Court's holding on the actual facts of *Oxendine*.

Additionally, the Court cited two other cases in *Oxendine* that reveal the logic behind its decision. Immediately following the hypothetical discussed above, the Court cited *Commonwealth v. Moore*, 121 Ky. 97, 88 S.W. 1085 (1905). The defendant in *Moore* sought to rob John Young who, in self-defense and defense of his house, accidentally shot and killed Anderson Young, an innocent bystander. The court in *Moore* said:

> Here the homicide was not committed by the conspirators, either in the pursuance of the conspiracy or at all; but it was the result of action on the part of John Young, the proprietor of the house, in opposition to the conspiracy, and entirely contrary to the wishes and hopes of the conspirators. In order that one may be guilty of homicide, the act must be done by him actually or constructively, and that cannot be, unless the crime be committed by his own hand, or by the hands of some one acting in concert with him, or in furtherance

of a common object or purpose. The defendants can in no sense be said to have aided or abetted John Young, for he was firing at them; and to hold them responsible criminally for the accidental death of a bystander, growing out of his bad aim, would be carrying the rule of criminal responsibility for the acts of others beyond all reason.

*Id.* at 99-100, 88 S.W. at 1086. With evident disdain, the court went on to say that such a rule would also mean that a defendant would be criminally responsible for the death of his cofelon at the hands of an opponent. "The illustration carried to this extreme," the court concluded, "exposes the unsoundness of the [State's] position." *Id.* at 101, 88 S.W. at 1086.

Similarly, the Court in *Oxendine* discussed with approval the treatment of a hypothetical by the court in *Commonwealth v. Campbell*, 89 Mass. (7 Allen) 544 (1863). In that hypothetical the Supreme Judicial Court of Massachusetts disavowed criminal liability for homicide on the part of a burglar when a homeowner acting in defense accidentally kills another occupant of the unlawfully entered house. *State v. Oxendine*, 187 N.C. at 662, 122 S.E. at 570.

In light of its language, the reasoning behind its hypothetical, and the citation of authority in *Oxendine*, there can be no doubt that the rule of *Oxendine* requires reversal of the convictions here. There, the Court reversed the conviction for manslaughter because the trial court's instructions permitted conviction where an adversary, not an accomplice, committed the deadly act. Here, though defendants engaged in reckless and dangerous conduct, neither they nor their accomplices committed the fatal act. Instead, Sergeant Pruitt, an adversary to defendants and their accomplices, was responsible for the deaths of Stewart and Gainey. Pruitt was not the agent of defendants, nor did he act in concert with them in a manner that furthered a common design or purpose. On the contrary, his every action was in direct opposition to the criminal scheme in which defendants and their accomplices were engaged. Thus, under the rule of *Oxendine* there can be no criminal liability for felony murder in this case.

The rule established in *Oxendine* is consistent with the prevailing rule in the overwhelming majority of states in this country— that "for a defendant to be held guilty of murder, it is necessary that the act of killing be that of the defendant, and for the act to be his, it is necessary that it be committed by him or by someone

acting in concert with him." Erwin S. Barbre, Annotation, *Criminal Liability Where Act of Killing Is Done By One Resisting Felony or Other Unlawful Act Committed by Defendant*, 56 A.L.R.3d 239, § 2 at 242 (1974); *see also* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 7.5, at 217 (1986) ("[I]t is now generally accepted that there is no felony-murder liability when one of the felons is shot and killed by the victim, a police officer, or a bystander."). *See, e.g., Wilson v. State*, 188 Ark. 846, 850-52, 68 S.W.2d 100, 101-02 (1934) (adopting agency theory, but holding it does not apply where felon uses victim as a "shield"); *People v. Antick*, 15 Cal.3d 79, 87, 539 P.2d 43, 48 (1975), *superseded by constitutional amendment on another point, People v. Castro*, 38 Cal.3d 301, 696 P.2d 111 (1985); *People v. Washington*, 62 Cal.2d 777, 781-82, 402 P.2d 130, 133-34 (1965) (Traynor, C.J.) ("[t]o invoke the felony-murder doctrine when the killing is not committed by the defendant or by his accomplice could lead to absurd results," describing fact situation almost identical to that here); *Alvarez, Jr. v. Dist. Ct.*, 186 Colo. 37, 525 P.2d 1131 (1974) (no felony murder liability under statute where robbery victim is mistakenly killed by police officer); *Weick v. State*, 420 A.2d 159, 162-63 (Del. Supr. 1980) (no felony murder liability under statute when accomplice is killed by robbery victim); *State v. Crane*, 247 Ga. 779, 780, 279 S.E.2d 695, 696 (1981) (no felony murder under statute when accomplice is killed by burglarized homeowner); *People v. Morris*, 1 Ill. App.3d 566, 570, 274 N.E.2d 898, 901 (1971), and *People v. Hudson*, 6 Ill. App.3d 1062, 1064-65, 287 N.E.2d 41, 43 (1972) (no felony murder liability when accomplice killed by felony victim); *Commonwealth v. Moore*, 121 Ky. 97, 100-02, 88 S.W. 1085, 1086-87 (1905) (no felony murder liability when robbery victim kills bystander while opposing robbery; contrary result "would be carrying the rule of criminal responsibility for the acts of others beyond all reason"); *State v. Garner*, 238 La. 563, 586-87, 115 So.2d 855, 864 (1959) (no felony murder liability when bar patron accidentally kills bystander while defending bartender against felonious assault); *Commonwealth v. Balliro*, 349 Mass. 505, 515, 209 N.E.2d 308, 314 (1965) (felon cannot be held liable for death of any person killed by someone resisting commission of the felony); *People v. Austin*, 370 Mich. 12, 32-33, 120 N.W.2d 766, 775 (1963) (no felony murder liability when accomplice killed by robbery victim); *Sheriff Clark County v. Hicks*, 89 Nev. 78, 82, 506 P.2d 766, 768 (1973) (no felony murder liability when victim of attempted murder kills accomplice; "[t]he killing in such an instance is done, not in the perpetration of,

or an attempt to perpetrate, a crime, but rather in an attempt to thwart the felony"); *State v. Canola*, 73 N.J. 206, 226, 374 A.2d 20, 30 (1977) (no felony murder liability when robbery victim kills accomplice); *People v. Wood*, 8 N.Y.2d 48, 54, 167 N.E.2d 736, 737-39 (1960) (no felony murder liability when robbery victim shoots accomplice); *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 223-37, 261 A.2d 550, 555-60 (1970) (overruling prior case law, adopts agency theory to deny felony murder liability when police officer kills another police officer during attempt to arrest robbers); *Commonwealth v. Redline*, 391 Pa. 486, 508-09, 137 A.2d 472, 482-83 (1958) (overruling prior case law, adopts agency theory to deny felony murder liability when victim kills accomplice); *State v. Severs*, 759 S.W.2d 935, 938 (Tenn. Crim. App. 1988) (no felony murder liability when larceny victim kills accomplice); *State v. Hansen*, 734 P.2d 421, 427 (Utah 1986) (felony murder statute limited to death of a person "other than a party"; no felony murder when accomplice killed by opponent of felony); *Wooden v. Commonwealth*, 222 Va. 758, 761-65, 284 S.E.2d 811, 814-16 (1981) (no felony murder liability when robbery victim shoots accomplice).

In one of the cases cited above, *State v. Canola*, 73 N.J. 206, 374 A.2d 20, defendant was convicted of felony murder when the robbery victim shot and killed one of defendant's cofelons. The court noted:

> Conventional formulations of the felony murder rule would not seem to encompass liability in this case. As stated by Blackstone about the time of the American Revolution, the rule was: "[I]f one intends to do another felony, and undesignedly kills a man, this also is murder." . . . A recent study of the early formulations of the felony murder rule by such authorities as Lord Coke, Foster and Blackstone and of later ones by Judge Stephen and Justice Holmes concluded that they were concerned solely with situations where the felon or a confederate did the actual killing. . . . [I]t has been observed that the English courts never applied the felony murder rule to hold a felon guilty of the death of his co-felon at the hands of the intended victim.

*Id.* at 208-09, 374 A.2d at 21 (citations omitted). The court further noted:

> It is clearly the majority view throughout the country that, at least in theory, the doctrine of felony murder does

not extend to a killing, although growing out of the commission of the felony, if directly attributable to the act of one other than the defendant or those associated with him in the unlawful enterprise. . . . This rule is sometimes rationalized on the "agency" theory of felony murder.

A contrary view, which would attach liability under the felony murder rule for *any* death proximately resulting from the unlawful activity — even the death of a co-felon — notwithstanding the killing was by one resisting the crime, does not seem to have the present allegiance of any court.

*Id.* at 211-12, 374 A.2d at 23 (emphasis in original, footnote and citations omitted).[1] In construing its felony murder statute, the court then concluded:

[I]t appears to us regressive to extend the application of the felony murder rule beyond its classic common-law limitation to acts by the felon and his accomplices, to lethal acts of third persons not in furtherance of the felonious scheme.

*Id.* at 226, 374 A.2d at 30. *See also* Norval Morris, *The Felon's Responsibility for the Lethal Acts of Others*, 105 U. Pa. L. Rev. 50, 50 (1956) (expansion of the felony murder rule, as urged here, is "socially unwise and . . . based on reasoning not free from substantial analytic and historical errors").

Several appellate courts have noted the "justifiability" of a victim's lethal response as a factor foreclosing the presence of an "unlawful act" required under felony murder statutes. *See People v. Antick*, 15 Cal.3d 79, 91, 539 P.2d 43, 50. As stated by the Supreme Court of Pennsylvania in a case with similar facts:

In the present instance, the victim of the homicide was one of the robbers who, while resisting apprehension in his effort to escape, was shot and killed by a policeman in the performance of his duty. Thus, the homicide was justifiable and, ob-

---

1. The court in *Canola* perhaps overstated the dearth of authority supporting the "proximate cause" theory. Two states, Missouri and Florida, appear to follow the minority "proximate cause" theory. *See Mikenas v. State*, 367 So.2d 606 (Fla. 1978) (express language of state statute makes every participant in a felony guilty of second-degree felony murder when someone is killed "by a person other than the person engaged in the . . . felony"); *State v. Baker*, 607 S.W.2d 153 (Mo. 1980) ("proximate cause" theory extended to case where accomplice is killed by opponent of the felony).

STATE v. BONNER

[330 N.C. 536 (1992)]

viously, could not be availed of, on any rational legal theory, to support a charge of murder. How can anyone, no matter how much of an outlaw he may be, have a criminal charge lodged against him for the consequences of the lawful conduct of another person? The mere statement of the question carries with it its own answer.

*Commonwealth v. Redline*, 391 Pa. at 509, 137 A.2d at 483. *See also People v. Austin*, 370 Mich. at 25, 120 N.W.2d at 771-72 (following *Redline*).

The State argues that for purposes of deterrence we should expand application of the felony murder rule to include cases such as these. Deterrence is a laudable objective of all aspects of the criminal law, but the proposition that criminal offenders not deterred by well-established and proper application of the felony murder rule will be deterred by the markedly broader version urged here is dubious at best.

[W]here it is sought to increase the deterrent force of a punishment, it is usually accepted as wiser to strike at the harm intended by the criminal rather than at the greater harm possibly flowing from his act which was neither intended nor desired by him; that is to say, for the situations before us, to increase penalties on felonies — particularly armed felonies — wherever retaliatory force can be foreseen, rather than on the relatively rarer occasions when the greater harm eventuates.

Norval Morris, *The Felon's Responsibility for the Lethal Acts of Others*, 105 U. Pa. L. Rev. 50, 67. Likewise, "Justice Oliver Wendell Holmes, in *The Common Law*, argued that the wise policy is not to punish the fortuity, but rather to impose severe penalties on those types of criminal activity which experience has demonstrated carry a high degree of risk to human life." *Commonwealth ex rel. Smith v. Myers*, 438 Pa. at 227, 261 A.2d at 554 (citing Oliver W. Holmes, Jr., *The Common Law* 59 (1881)).

Finally, even if we overruled *Oxendine* and expanded the scope of our felony murder rule as the State suggests, we could not uphold these defendants' convictions. Such an expansion of the scope of criminal liability, applied retroactively, would appear to violate defendants' rights to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution. *See Marks v. United States*, 430 U.S. 188, 191-92, 51 L. Ed. 2d

260, 264-65 (1977); *Bouie v. City of Columbia,* 378 U.S. 347, 355, 12 L. Ed. 2d 894, 900 (1964); *see also State v. Vance,* 328 N.C. 613, 620, 403 S.E.2d 495, 500 (1991). While the General Assembly could effectively overrule *Oxendine* and impose criminal responsibility for murder under the facts presented, it could only do so prospectively, and the task is properly left to it. "[E]xtension of the felony-murder rule beyond its common law limitation to acts by the felon and his accomplice, to include the legal actions of those not acting in pursuance of the felonious scheme, is an appropriate action for the legislature[,] . . . not the courts." *State v. Severs,* 759 S.W.2d 935, 938 (Tenn. Crim. App. 1988).

For the foregoing reasons, we conclude that the trial court erred in denying defendants' motions to withdraw their pleas of guilty of first-degree felony murder. Therefore, we reverse, and remand the causes to the Superior Court, Forsyth County, with instructions to vacate the judgments entered upon defendants' pleas of guilty of first-degree felony murder. Nothing else appearing, our reversal of the felony murder convictions, which apparently prompted arrest of judgment on the underlying armed robbery charges to which defendants pled guilty, removes the legal impediment to entry of judgment and sentence on those charges. *State v. Pakulski,* 326 N.C. 434, 390 S.E.2d 129 (1990).

Reversed and remanded.