NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter.  Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

BRIAN ALBERT PFISTER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12019
Trial Court No. 3AN-11-12507 CR

O P I N I O N

No. 2600 — May 18, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael R. Spaan, Judge.

Appearances:  Dan S. Bair, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant.  Michal Stryszak, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before:  Mannheimer, Chief Judge, and Allard and Wollenberg, Judges.

Judge MANNHEIMER.

In November 2011, Brian Albert Pfister and two accomplices — Joseph Trantham and Maurice Johnson — decided to break into the home of a marijuana grower

and rob him. Pfister waited outside while his two accomplices entered the marijuana grower's home.

Once Trantham and Johnson were inside the home, they pistol-whipped the marijuana grower and demanded his money. The marijuana grower led Trantham and Johnson to his safe — where, unbeknownst to the robbers, he kept a handgun. The grower removed the handgun from the safe and used it to shoot Trantham and Johnson — mortally wounding both of them. Pfister ran away, but he was later arrested.

The State charged Pfister with first-degree burglary, first-degree robbery, and conspiracy to commit robbery. The State also charged Pfister with two counts of manslaughter, for causing the deaths of his two accomplices. Following a jury trial, Pfister was convicted of all these crimes.

In this appeal, Pfister challenges his two manslaughter convictions. He asserts that, under Alaska law, an accomplice to a dangerous felony cannot be convicted of manslaughter when the person who is killed as a result of the felony is another accomplice.

Pfister notes that, under Alaska law, he could not be convicted of felony-murder for the deaths of his accomplices. This is because the portion of the second-degree murder statute that defines felony-murder, AS 11.41.110(a)(3), expressly exempts situations where the person who dies during a violent felony is "one of the participants" in that felony.

Based on the fact that Alaska's felony-murder statute does not cover situations where a felony results in the death of an accomplice to that crime, Pfister argues that the Alaska Legislature also must have intended to exempt accomplices to a felony from *any* criminal liability for the death of another accomplice. Thus, under Pfister's view of the law, he could not be convicted of manslaughter or any other degree

of criminal homicide based on the deaths of his two accomplices to the burglary and robbery in this case.

As we explain in this opinion, Pfister's argument is inconsistent with the common law defining the crime of manslaughter. Based on that common law, and based on the hundred-year history of Alaska's manslaughter statute, we conclude that Pfister's proposed limitation on the crime of manslaughter is inconsistent with the intent of the Alaska Legislature. We therefore uphold Pfister's two manslaughter convictions.

However, for the reasons explained in this opinion, we remand Pfister's case to the superior court for re-sentencing.

*The common-law definition of manslaughter, and the related doctrines of felony-murder and misdemeanor-manslaughter*

At common law, the crime of manslaughter was a residual category of unlawful homicide. Manslaughter was defined as any unlawful homicide committed without malice aforethought — that is, any unlawful homicide that was not murder. [1]

Thus, whenever a person caused the death of another human being, and if that killing was neither justified nor excused, and if the killing did not constitute some form of murder, then the person was guilty of manslaughter. [2]

One of the forms of murder recognized at common law was "felony-murder". In the early days of the common law, this doctrine applied only to homicides

---

[1] Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd ed. 1982), p. 82; Wayne R. LaFave, *Substantive Criminal Law* (3rd ed. 2018), § 15.1, Vol. 2, p. 668.

[2] *Perkins & Boyce*, p. 83; *LaFave*, Vol. 2, p. 668.

that were caused during an *attempt* to perpetrate a felony — because, in those days, any completed felony was already punishable by death. [3]

Later, when the law allowed lesser penalties for felonies, the felony-murder doctrine was altered to cover any unintended homicide that resulted from the perpetration or attempted perpetration of an inherently dangerous felony, or from any other felony that was perpetrated in a dangerous manner. [4] In such instances, the common law viewed the defendant's intent to commit the felony as "malice aforethought" — thus elevating the homicide to murder — even though the defendant had no intent to kill. [5]

Because the only intent required for felony-murder was the intent to commit the felony, the felony-murder rule applied to deaths that were attributable to the commission of a felony even if those deaths were unforeseen or even quite unexpected:

> If [the] intent [to commit the felony] is shown[,] the resulting homicide is murder even if it was quite accidental. ... [For example,] if arson results in the death of a fireman who was trying to put out the fire, the arsonist is recognized as having caused this death and is guilty of murder under the felony-murder rule. [6]

Indeed, even the accidental killing of an accomplice during the perpetration of the felony was felony-murder for this same reason. [7]

---

[3]    *Perkins & Boyce*, pp. 70-71.

[4]    *Perkins & Boyce*, pp. 62-65 & 70-72; *LaFave*, Vol. 2, pp. 604-612.

[5]    *Perkins & Boyce*, p. 71.

[6]    *Perkins & Boyce*, pp. 67-68.

[7]    *Perkins & Boyce*, p. 68; *LaFave*, Vol. 2, p. 618.

The common law also recognized a related doctrine that is commonly referred to as the "misdemeanor-manslaughter" rule.

Under this rule, a person was guilty of manslaughter if they engaged in any unlawful act that was not covered by the felony-murder rule and, as a result, another person died.

The misdemeanor-manslaughter rule is sometimes treated as if it were a separate legal doctrine, distinct from (but related to) the felony-murder rule. However, in truth, the misdemeanor-manslaughter rule follows directly from the definition of manslaughter.

As we explained earlier, the common law defined manslaughter as any unlawful homicide that did not constitute murder. Thus, if a person engaged in an unlawful act, and if that act resulted in the unintended death of another human being, and if that death did not constitute felony-murder, then the crime was manslaughter.

*Alaska's historical definitions of manslaughter and felony-murder*

During the eighty-year interval between the earliest codification of Alaska territorial law (the Carter Code of 1900)[8] and the effective date of Alaska's current criminal code (January 1, 1980),[9] Alaska adhered to the common-law definition of manslaughter. That is, manslaughter was the residual category of unlawful homicide: it encompassed any unlawful homicide that did not constitute either first- or second-degree murder.

---

[8]  Thomas H. Carter, *Laws of Alaska* (1900).

[9]  *See* SLA 1978, ch. 166, § 25.

The earliest codification of this principle is found in Part I, Section 6 of the Carter Code:

> [W]hoever unlawfully kills another, except as provided in [the sections defining first- and second-degree murder], is guilty of manslaughter ... .

The next four sections of the Carter Code (Part I, Sections 7 through 10) described four specific types of killing, including "negligent homicide". But each of these sections ended with language declaring that this type of unlawful killing was "deemed manslaughter" and was to be "punished accordingly".

This statutory format — one statute defining manslaughter as any unlawful killing that did not constitute murder, followed by four accompanying statutes, each declaring that a specific type of killing was manslaughter — was carried forward, with essentially no change, in every codification of Alaska law until 1980, the year when Alaska's current criminal code went into effect. [10]

But even though Alaska law followed the common-law approach to the crime of manslaughter as the residual category of homicide, Alaska law departed significantly in its approach to the felony-murder rule.

Up until January 1980 (when our current criminal code took effect), there was no provision of Alaska law that raised an *unintended* killing to murder, even if the killing occurred during the perpetration of a felony. Rather, Alaska's version of the felony-murder rule applied only to *intentional* killings that were committed during the perpetration of certain listed felonies (rape, arson, robbery, or burglary).

---

[10] *See* the 1949 Compiled Laws of Alaska, §§ 65-4-4 through 65-4-8, and (following statehood) former AS 11.15.040 through AS 11.15.080.

Any unlawful (and unprovoked) intentional homicide was already second-degree murder under Alaska law. [11] The effect of Alaska's idiosyncratic felony-murder statute was to raise this homicide from second-degree murder to first-degree murder if the intentional killing occurred during one of the listed felonies. [12]

(Alaska's distinctive pre-1980 version of the felony-murder rule is described and explained in *Gray v. State*, 463 P.2d 897, 902-04 (Alaska 1970).)

Because the Alaska definition of felony-murder was so restricted (*i.e.*, because the felony-murder rule applied only to intentional killings), Alaska had a correspondingly broad "misdemeanor-manslaughter" rule.

As we have explained, manslaughter was the residual category of criminal homicide under pre-1980 Alaska law: it encompassed any unlawful homicide that did not constitute murder. Because Alaska's narrow felony-murder rule simply did not apply to unintended killings (even when the killings resulted from the perpetration of a felony), those unintended killings fell into the residual category of manslaughter.

In *Keith v. State*, 612 P.2d 977, 988-89 (Alaska 1980), our supreme court recognized this principle. The court characterized Alaska's "distinctive" statutory scheme as embodying not only the traditional misdemeanor-manslaughter rule but also a "felony-manslaughter rule". *Id.* at 988.

*Alaska's current definitions of manslaughter and felony-murder*

As we have just explained, under Alaska's pre-1980 criminal law, the crime of murder did not include unintended killings, even when those killings resulted from the

---

[11]  *See* Carter Code, Part I, Section 5; CLA 1949, § 65-4-3; and AS 11.15.030.

[12]  *See* Carter Code, Part I, Section 3; CLA 1949, § 65-4-1; and AS 11.15.010.

perpetration of a felony. Instead, the crime of manslaughter encompassed all unintended killings that resulted from any unlawful act.

The drafters of Alaska's current criminal code made significant changes to this area of the law. They created Alaska's first true felony-murder rule, and they also made two substantive changes to the definition of manslaughter.

Alaska now has a felony-murder provision — AS 11.41.110(a)(3) — that mirrors the common-law doctrine of felony-murder in most respects. Under this statute, an unintended homicide is now murder (second-degree murder) if the homicide occurs during the commission or attempted commission of a specified serious felony:

> (a) A person commits the crime of murder in the second degree if ...
>
> (3) under circumstances not amounting to murder in the first degree under AS 11.41.100(a)(3), while acting either alone or with one or more persons, the person commits or attempts to commit [one of the following felonies] and, in the course of or in furtherance of that crime or in immediate flight from that crime, any person causes the death of a person other than one of the participants[.]

For purposes of the present appeal, the key aspect of this felony-murder provision is that it departs from the common-law rule with respect to the death of an accomplice. At common law, if an accomplice died during the perpetration of a felony, the surviving accomplices could be convicted of felony-murder. But under Alaska's felony-murder statute, a person cannot be convicted of felony-murder based on the death of one of the other participants in the felony.

The drafters of AS 11.41.110(a)(3) did not explain why they placed this limitation on the scope of the felony-murder doctrine. [13]  However, Professor LaFave notes that several other modern criminal codes contain this same limitation on the felony-murder rule. [14]  And some modern appellate court decisions have reached this conclusion as a matter of statutory interpretation — although this approach is certainly not unanimous. [15]

Turning to the crime of manslaughter, the drafters of our current criminal code modified the definition of this crime in two substantive ways.

First, negligent homicide became a crime in its own right — defined separately from manslaughter, and punishable by a lesser penalty.  *See* AS 11.41.130.

Second, the drafters of our criminal code decided to abolish the "misdemeanor-manslaughter" rule — the rule that a person was guilty of manslaughter if they unintentionally caused the death of another human being while perpetrating any unlawful act (unless the unlawful act was the kind that would support a conviction for felony-murder). [16]

The drafters abolished the misdemeanor-manslaughter rule by defining manslaughter in a new way.  Under the drafters' manslaughter statute, AS 11.41.120(a),

---

[13]  *See* Alaska Criminal Code Revision, Tentative Draft, Part I (1977), pp. 27-29.

[14]  Wayne R. LaFave, *Substantive Criminal* Law (3rd ed. 2018), § 14.5(d), Vol. 2, p. 622 & n. 72.

[15]  See *Commonwealth v. Tejeda*, 41 N.E.3d 721 (Mass. 2015), and *State v. Bonner*, 411 S.E.2d 598 (N.C. 1992), where the courts endorsed an exclusion for the deaths of accomplices.  But see *State v. Pellegrino*, 480 A.2d 537 (Conn. 1984); *State v. Baker*, 607 S.W.2d 153, 155-56 (Mo. 1980); and *State v. Oimen*, 516 N.W.2d 399 (Wis. 1994) — all endorsing the common-law rule that an accomplice to a felony is guilty of felony-murder if another accomplice is killed during the commission of the crime.

[16]  *See* Alaska Criminal Code Revision, Tentative Draft, Part I (1977), p. 34.

it was no longer sufficient for the government to prove that the defendant acted with the intent to commit an unlawful act, and that a death ensued. Instead, the government would have to prove that the defendant acted either intentionally, knowingly, or recklessly with regard to the possibility that their conduct might cause the death of another human being:

> (a) A person commits the crime of manslaughter if the person ... intentionally, knowingly, or recklessly causes the death of another person under circumstances not amounting to murder in the first or second degree.

Former AS 11.41.120(a) (pre-2006 version). [17]

By requiring proof of one of these three culpable mental states, the manslaughter statute effectively abolishes the misdemeanor-manslaughter rule — a rule that did not require proof of any culpable mental state apart from the intent to perpetrate an unlawful act.

(The manslaughter statute omits "negligence" from the list of culpable mental states because, as we explained earlier, criminally negligent homicide is now independently defined as a lesser crime. [18])

---

[17] In 2006, the legislature amended the manslaughter statute by adding subsection (a)(3). This subsection imposes strict liability for manslaughter when a death ensues as a result of the defendant's furnishing another person with one of the listed controlled substances. *See* SLA 2006, ch. 53, § 3.

[18] *See* Alaska Criminal Code Revision, Tentative Draft, Part I (1977), pp. 34-35.

*Why we conclude that, even though Pfister cannot be convicted of felony-murder for the deaths of his accomplices, he can be convicted of manslaughter for these deaths*

As we explained at the beginning of this opinion, Pfister was convicted of two counts of manslaughter based on the deaths of his two accomplices in the robbery. Pfister argues that the Alaska Legislature did not intend the manslaughter statute to apply to situations like his.

Pfister notes that AS 11.41.110(a)(3) expressly exempts people in his situation from conviction for second-degree murder under a felony-murder theory. Based on this, Pfister argues that the legislature must also have intended for there to be no lesser criminal liability for people in his situation — and that, therefore, he cannot be convicted of manslaughter based on the deaths of his two accomplices.

We conclude that when an accomplice to a felony is killed by the victim, or by police officers responding to the crime, Alaska law allows the surviving accomplices to be prosecuted for manslaughter (or for the lesser offense of criminally negligent homicide).

We reach this conclusion because the crime of manslaughter requires proof of an element beyond the elements of felony-murder. Unlike the crime of felony-murder, manslaughter requires proof that the defendant acted with a culpable mental state (either intentionally, knowingly, or recklessly) regarding the possibility that their conduct would cause the death of another human being. The crime of felony-murder, on the other hand, only requires proof that the defendant acted with the intent of perpetrating one of the felonies listed in AS 11.41.110(a)(3).

It will often be true that a defendant's intent to commit one of these listed felonies will be strong evidence that the defendant acted at least recklessly regarding the possibility that someone would die. But this is not invariably so. That is why the

drafters of our criminal code rejected the misdemeanor-manslaughter doctrine and, instead, insisted on proof that the defendant acted at least recklessly with regard to the possibility that someone would die as a result of their actions.

Moreover, in these situations, we see no inconsistency between a legislative policy to spare defendants the severe penalties of second-degree murder while, at the same time, subjecting these defendants to the lesser penalties of manslaughter or criminally negligent homicide.

We acknowledge that our manslaughter statute does not expressly call for this result. But as we have explained, the crime of manslaughter is — and traditionally has been — a residual category of unlawful homicide, encompassing the various types of unlawful killings that do not constitute some form of murder.

Thus, for example, no provision of Alaska law expressly states that an intentional homicide committed in the heat of passion is manslaughter. Instead, AS 11.41.115(a) simply declares that heat of passion is a defense to murder. But because an unlawful intentional killing in the heat of passion is not murder, it is manslaughter under AS 11.41.120.

The same principle applies to Pfister's case. Under our second-degree murder statute, a homicide that results from the commission of a felony does not constitute felony-murder if the person killed was an accomplice to the felony. But because the killing is not murder, it falls within the residual category of manslaughter if the State can prove (1) that the defendant's conduct was a substantial factor in causing the death,[19] and (2) that the defendant acted at least recklessly with respect to the possibility that someone would die as a result of their actions.

---

[19] *See Johnson v. State*, 224 P.3d 105, 109-111 (Alaska 2010); *Rogers v. State*, 232 P.3d 1226, 1233 (Alaska App. 2010); *State v. Malone*, 819 P.2d 34, 36 (Alaska App. 1991).

For these reasons, we hold that Pfister could lawfully be convicted of manslaughter for the deaths of his two accomplices.

*Why we remand Pfister's case to the superior court for re-sentencing*

As we explained near the beginning of this opinion, Pfister was also convicted of first-degree burglary and conspiracy to commit first-degree robbery.

First-degree burglary is a class B felony,[20] and Pfister (who was a first felony offender) faced a presumptive sentencing range of 1 to 3 years' imprisonment for this crime.[21] But even though the sentencing judge found no aggravating factors, the judge imposed a sentence above the presumptive range: 4 years' imprisonment with 2 years suspended. The State concedes that, in the absence of aggravating factors, this sentence was unlawful.

Likewise, conspiracy to commit first-degree robbery is a class B felony (because first-degree robbery is a class A felony).[22] So again, Pfister faced a presumptive range of 1 to 3 years' imprisonment for this crime[23] — and again, although no aggravating factors were proved, the judge imposed a sentence above the presumptive range: 4 years' imprisonment with 2 years suspended. The State concedes that this sentence was unlawful as well.

We accordingly direct the superior court to re-sentence Pfister.

---

[20] AS 11.46.300(b).

[21] Former AS 12.55.125(d)(1) (2010 version).

[22] AS 11.41.500(b); AS 11.31.120(i)(3).

[23] Former AS 12.55.125(d)(1) (2010 version).

*Conclusion*

Pfister's two convictions for manslaughter are AFFIRMED, but he must be re-sentenced because his sentences for first-degree burglary and conspiracy to commit first-degree robbery are illegal.

2600